IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LALOTOA SEFO LAU,<br><br>Defendant. | CR. NO. 13-00516 JMS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE RELEASE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 20 |

## ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE RELEASE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 20

### I. INTRODUCTION

Defendant Lalotoa Sefu Lau ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Terminal Island ("Terminal Island") based on several serious pre-existing medical conditions and the COVID-19 pandemic.  The court determines that although Defendant has demonstrated several reasons that would justify his release, he has failed to provide any release plan that would make him any safer from contracting COVID-19.  Given this finding, his motion is DENIED.  Should Defendant develop a release

plan that would address the court's concerns, he may refile his motion setting forth that release plan.

## II. <u>BACKGROUND</u>

Defendant is a 66-year-old inmate incarcerated at Terminal Island with a projected release date of June 13, 2022. *See* https://www.bop.gov/ inmateloc/ (last visited December 29, 2020).

On June 4, 2013, Defendant pled guilty to a five-count Information charging him with: 1) aiding and abetting an illegal gambling business (count 1); conspiracy to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine (count 2); aiding and abetting the distribution of 50 grams or more of methamphetamine (counts 3 and 4); and aiding and abetting the possession with intent to distribute 50 grams or more of methamphetamine (count 5). *See* ECF Nos. 1, 6, 8; *see also* Presentence Investigation Report ("PSR") ¶¶ 4-11, ECF No. 15 at PageID ## 74-76. On September 23, 2013, Defendant was sentenced to a total term of 132 months imprisonment and a total term of six years of supervised release. ECF No. 13 at PageID # 59; ECF No. 14 at PageID ## 63-64.

Defendant submitted a request for compassionate release to Terminal Island's Warden on a date unknown, and the Warden denied that request on May 26, 2020. *See* ECF No 20-4. On October 2, 2020, Defendant, represented by

2

counsel, filed the instant Motion for Compassionate Release, seeking a sentence reduction to time served. ECF No. 20-1 at PageID # 213. In that motion, Defendant set forth a release plan—to live with his sister at her home in Pearl City, Hawaii with location monitoring. *Id*. On October 19, 2020, the Government filed its Response. ECF No. 24. A telephonic hearing was held on October 22, 2020, where the court informed the parties that it was giving serious consideration to granting the motion. ECF No. 26. But before making a determination, the court required the United States Probation Office ("USPO") to consult with Defendant's sister to confirm that she was willing to house Defendant, and that the housing was suitable. *Id.* During an October 30, 2020 status conference, the court was informed that Defendant's sister would not permit Defendant to stay with her. ECF No. 29. The court then permitted defense counsel more time to explore a different release plan. *Id*. On December 11, 2020, defense counsel reported that Defendant had no other release plan. ECF No. 31.

Given that the Bureau of Prisons ("BOP") closed the only half-way house in the District of Hawaii during 2019, the USPO reported that the only option for release was Faith House, a communal living residence in Honolulu. *Id*. At the request of the court, the USPO submitted a report on its view of the safety of living at Faith House versus Terminal Island. ECF No. 32. Defendant filed a

reply to the USPO report on December 23, 2020, ECF No. 33, and the United

States filed a late reply on December 28, 2020, ECF No. 35.

## III.  DISCUSSION

### A.    Legal Standard

Defendant moves for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018,[1] which provides as

relevant:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the
> term of imprisonment . . . after considering the factors set
> forth in [18 U.S.C.] section 3553(a) to the extent that
> they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant
> such a reduction;
> . . . .
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Thus, the court may reduce Defendant's sentence if: 1) Defendant has

exhausted the required administrative remedies; 2) Defendant has shown that

---

[1]  Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

"extraordinary and compelling reasons" warrant the reduction; and 3) the reduction is consistent with applicable Sentencing Commission's policy statements.  Here, Defendant has exhausted his administrative remedies.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided Defendants the ability to file a motion for compassionate release (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act).  Several courts have thus determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release.  *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (stating that Guideline § 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion"); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (stating that when a defendant "exercises his new right to move for compassionate release on his own behalf," "§ 1B1.13 is not an 'applicable' policy statement at all"); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district

5

courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *but see United States v. Arceneaux*, 2020 WL 7230958, at *1 (9th Cir. Dec. 8, 2020) (mem.) (affirming district court's denial of compassionate release based in part on consideration of § 1B1.13(2)).

Previously, this court agreed that it could consider the "full slate" of extraordinary and compelling reasons, although for slightly different reasons. That is, the court determined that the Guideline commentary's fourth, catch-all provision (granting discretion to the BOP Director to determine whether other extraordinary and compelling reasons exist), applies equally to the court when ruling on motions for compassionate release. *See United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). Regardless of the ultimate reasoning applied, the court agrees with Defendant that the court is not bound by Guideline § 1B1.13's restrictions, but instead may make its own independent determination whether extraordinary and compelling reasons warrant a sentence reduction.

///

///

**B.      Extraordinary and Compelling Reasons**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted).  Here, Defendant contends that he should be released from custody because, among other things: 1) he is 66 years old and suffers from obesity,[2] insulin-dependent type 2 diabetes, hypertension, neuropathy, hyperlipidemia, osteoarthritis, degenerative joint disease, and chronic periodontitis; 2) he suffered a cardiac arrest in October 2020; and 3) given these medical conditions, he is at great risk of serious illness or death should he contract COVID-19.  ECF No. 20-1 at PageID ## 196-99.

The court agrees that Defendant has several underlying medical conditions that place him or might place him at an increased risk for severe illness from COVID-19.  According to the Centers for Disease Control and Prevention ("CDC"), at least three of Defendant's conditions—obesity with a BMI of 30 or higher, type 2 diabetes mellitus, and a heart condition—each place him at an increased risk of serious illness should he contract COVID-19.  *See* https://www.

---

[2]  Defendant's medical records from September 2018 reflect a BMI of 37.0 to 37.9.  *See* ECF No. 20-7 at Page ID # 704.  More current records reflect that Defendant is 5'8" tall and weighed 239 pounds as of May 21, 2020.  *Id.* at PageID ## 289, 695.  With this height and weight, Defendant has a BMI of 36.3.  *Calculated using* https://www.cdc.gov/healthyweight/ assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited December 29, 2020).

cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 29, 2020).  Further, an individual with hypertension "might be at an increased risk."  *Id*.

And, at 66 years old, Defendant is at a higher risk from COVID-19 complications.  As stated by the CDC:

> The risk for severe illness from COVID-19 increases with age, with older adults at highest risk.  For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited December 29, 2020).

In short, it is beyond question that Defendant's age coupled with his pre-existing medical conditions places him at a greatly increased risk of serious illness, or death, should he contract COVID-19.

Terminal Island currently houses 715 inmates.  *See* https://www.bop.gov/locations/institutions/trm/ (last visited December 29, 2020). During the course of the pandemic, out of a total of 718 inmates tested at Terminal Island, 486 have tested positive for COVID-19.  *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited December 29, 2020).

Currently, Terminal Island has six inmates and nine staff members with "confirmed" active cases.  *Id.*

Against this background, the court must consider the relevant § 3553(a) factors.  These include: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant";[3] and 2) "the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).  And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  *Id.* § 3553(a).

Defendant's offense conduct, as set forth in the PSR, demonstrates that he was involved with gambling and the distribution of methamphetamine for a long period of time.  PSR ¶¶ 15-91, ECF No. 15 at PageID ## 76-96.  Further, Defendant received a three-level upward adjustment for this role in the offense.  *Id.*

---

[3] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

9

¶ 104, ECF No. 15 at PageID # 98.  And Defendant has a substantial and troubling criminal history.  *Id.* ¶¶ 123-38, ECF No. 15 at PageID ## 100-07.

Against this backdrop, Defendant has only approximately 20 months remaining on his 132-month sentence.[4]  Further, while incarcerated, Defendant has earned his GED, completed more than fifty educational courses, has maintained employment, and has apparently had no disciplinary issues.  *See* ECF No. 20-1 at Page ID # 209; ECF No. 20-5.

After weighing the § 3553(a) factors and taking into account Defendant's age and serious medical conditions, the court concludes that it would find extraordinary and compelling reasons to justify his release *if* Defendant had a release plan that would provide him a safer environment than Terminal Island.  But Defendant has not made that showing.

The court and the parties agree that the only possible residence for Defendant upon release would be Honolulu's Faith House, a communal housing

---

[4]  When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See, e.g.*, *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020); *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. May 8, 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

residence.  As discussed during a status conference, Faith House residents include

individuals under both state and federal supervision, and residents of Faith House

have tested positive for COVID-19 in the past.  The court ultimately agrees with

USPO's view that Defendant "would be safer, and receive better care, if he

remained at FCI-Terminal Island."  ECF No. 32 at PageID # 797.  For example, the

USPO points out that there is unrestricted movement in and out of Faith House,

and the residents live in a communal setting.[5]  *Id.* at PageID # 799.  Defendant has

simply failed to show that under his release plan he would be at a lesser risk of

contracting COVID-19.

     Further, although there is no "applicable" Sentencing Commission

policy statement for compassionate release motions filed with the court, Guideline

§ 1B1.13 requires the court to find that "the defendant is not a danger to the safety

of any other person or the community, as provided in 18 U.S.C. § 3142(g)."[6]

Although the court finds that in a more structured environment Defendant could

---

[5]  In his reply to the USPO position statement, Defendant claims that he is safer outside
of Terminal Island than inside Terminal Island.  *See generally* ECF No. 33.  But this is a false
premise—the court agrees that Defendant would be safer living, for instance, with his sister.  But
the binary question presently before the court is whether Defendant is at a greater risk at
Terminal Island than Faith House.  And, because Faith House is a communal living residence
that has had COVID-19 cases in the past, at a minimum Defendant has not met his burden of
showing that he would be any safer in Faith House than in Terminal Island.

[6]  The court agrees with the statement in *Gunn*, 980 F.3d at 1180, that "the Commission's
analysis [in § 1B1.13] can guide discretion without being conclusive."

show a lack of dangerousness, the same is not true in an unstructured setting like Faith House.  In short, the court determines that without a much more structured environment than Faith House offers, the Defendant would remain a danger to society.  *See, e.g.*, *United States v. Jimenez*, 2020 WL 5630412 at *3-4  (C.D. Ill. Sept. 21, 2020); *United States v. Warren*, 2020 WL 3404691 at *1-2 (D. Idaho June 19, 2020); *United States v. Butov*, 2020 WL 5910063 at *6 (W.D. Wash. Oct. 6, 2020).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 20, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 29, 2020.



    <u>/s/ J. Michael Seabright</u>
J. Michael Seabright
Chief United States District Judge

*United States v. Lau,* Cr. No. 13-00516 JMS, Order Denying Defendant's Motion for Immediate Release Under the First Step Act (Compassionate Release), ECF No. 20